UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELISSA HACKETT,

    Plaintiff,

v.

BOARD OF EDUCATION OF THE
MARYSVILLE EXEMPTED VILLAGE
SCHOOL DISTRICT,

    Defendant.

Case No. 2:18-cv-1308
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Defendant Board of Education of the Marysville Exempted Village School District's ("Defendant") Motion for Judgment on the Pleadings. (ECF No. 13). Plaintiff Melissa Hackett has filed a response (ECF No. 14) and Defendant has replied (ECF No. 15). Accordingly, this matter is ripe for review. For the reasons stated herein, Defendant's Motion (ECF No. 13) is **GRANTED**.

I.

Plaintiff Melissa Hackett ("Plaintiff" or "Ms. Hackett") commenced this action on October 25, 2018, filing a Complaint asserting one claim against the Defendant, alleging a violation of Plaintiff's Due Process rights guaranteed under the Fourteenth Amendment to the United States Constitution. (*See generally* Compl. [ECF No. 1]). Defendant filed a Motion to Dismiss the Complaint on December 19, 2018. (ECF No. 5). Plaintiff filed an Amended Complaint on January 8, 2019. (*See generally* Am. Compl. [ECF No. 6]). The Amended Complaint contains three claims brought under 42 U.S.C. § 1983; Plaintiff also seeks attorney fees under 42 U.S.C. § 1988. (*See generally id.*).

On April 17, 2014, Plaintiff and Defendant entered into a written Administrator's Contract ("the Contract") pursuant to Ohio Revised Code § 3319.02. (*See* Contract at 3 [ECF No. 6, Ex. 1]). Pursuant to the Contract, Ms. Hackett would serve as Principal at one of Defendant's schools for a term of three years, beginning on August 1, 2014 and ending on July 31, 2017. (*Id.* at 1). Further, Plaintiff states, this Contract was subject to renewal for a two-year term if Plaintiff were not given written notice of Defendant's intent to not re-employ her. (Am. Compl. ¶ 11–12). Similarly, Plaintiff had a continuing employment contract with Defendant entitling her to work as a teacher for Defendant unless she was fired or suspended in accordance with Ohio law. (*Id.* ¶¶ 17–19).

However, Plaintiff received a letter dated July 17, 2015, from Defendant informing her that the Board adopted resolutions: 1) declaring its intent to consider the termination of her administrator and teacher contracts; and 2) placing Plaintiff on unpaid suspension until the conclusion of such proceedings. (Termination Letter [ECF No. 9-2]; Mandamus Compl. ¶¶ 2–3 [ECF No. 13-1]).[1] Plaintiff was, in fact, suspended without pay effective July 16, 2015. (Compl. ¶ 7 [ECF No. 1]). After receiving this letter, Plaintiff submitted a written demand for a referee hearing in accordance with Ohio Rev. Code § 3319.16. (Demand Letter [ECF No. 9-1]; Mandamus Compl. ¶ 4). A list of potential referees was provided to Plaintiff in a letter dated July 29, 2015 and, in that same letter, Plaintiff was advised that her hearing was scheduled for August 25, 2015. (Mandamus Compl. ¶¶ 5–6). But while the parties agreed upon a referee, the August 25, 2015 hearing did not take place and was not rescheduled, all for reasons not explained in the record of this case. (*Id.* ¶¶ 7–9).

---

[1] The Court may properly consider docket entries ECF Nos. 9-1, 9-2, and 13-1, without converting this Rule 12 Motion into a motion for summary judgment as discussed in Section II. A., *infra*.

2

In her first cause of action, Plaintiff submits that by failing to provide a hearing with regard to her contractual compensation, the defendant violated the Due Process Clause of the 14th Amendment to the United States Constitution. (*See* Am. Compl. ¶¶ 5–9). Further, Plaintiff's second claims asserts that, after Plaintiff invoked her right to have a referee hear her case, Defendant could not lawfully terminate her contract prior to such hearing. (*See id.* ¶¶ 10–16). And in her third claim for relief, Plaintiff maintains that she still has an active teacher's contract with Defendant which further entitles her to compensation. (*Id.* ¶¶ 18–19).

Defendant contends that: 1) Plaintiff's first claim is time-barred; and 2) Plaintiff has failed to state a claim upon which relief may be granted for her second and third causes of action. (Def. Mot. at 5–11 [ECF No. 13]). Plaintiff replied that this action was timely filed and that her second and third claims were pleaded sufficiently. (*See generally* Pl. Opp'n [ECF No. 14]).

## II.

The Court reviews a Rule 12(c) motion for judgment on the pleadings in the same manner it would review a motion made under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Ranch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.* Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). To meet this standard, a complain must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombley*.).

Several considerations inform whether a complaint meets the facial-plausibility standard. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. A complaint will not, however, "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombley*, 555 U.S. at 557). Courts must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

## III.

### A. Documents not part of Plaintiff's Amended Complaint

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Under a well-established exception to Rule 12(d), courts may consider documents attached to a Rule 12(b)(6) or 12(c) motion without coverting either into a summary-judgment motion if the attached materials are: (i) 'referred to in the plaintiff's complaint and are central to [the] claims' or (ii) 'matters of public record.' *Kassem v. Ocwen Laon Servicing, LLC*, 704 F. App'x 429, 432 (6th Cir. 2017) (quoting *McLaughlin v CNS Gas Co., LLC*, 639 F. App'x 296, 298–99 (6th Cir. 2016); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).

4

Attached to Defendant's Answer to the Amended Complaint are two exhibits: "Exhibit A" is Plaintiff's letter demanding a hearing before a referee prior to the final decision to terminate her contract, (*see* Demand Letter [ECF No. 9-1]); "Exhibit B" is Defendant's letter to Plaintiff notifying her of Defendant's decisions to terminate her contracts and suspend her without pay, (*see* Termination Letter). Defendant has attached as "Exhibit A" to its Rule 12(c) Motion, Plaintiff's Complaint for Writ of Mandamus, filed in the Third District Court of Appeals in the State of Ohio. (*See generally* Mandamus Compl. [ECF No. 13-1]).

Defendant submits that the Court can consider these attachments without converting its Rule 12 Motion into a motion for summary judgment as the documents are all matters of public record. (Def. Mot. at 4–5). Defendant further avers that the documents attached to its Answer can be considered as they "fill [. . .] in the contours and details of the plaintiff's complaint." (*Id.* at 5) (quoting *Yeary v. Goowill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997); *see also Lion Apparel v. City of Cincinnati*, No. 1:05-cv-61, 2006 WL 4643320, at *1 (Mar. 13, 2006)). Plaintiff does not oppose Defendant's submission that the Court can properly consider these documents when ruling on a Rule 12 motion. (*See generally* Pl. Opp'n).

Under Ohio Revised Code § 149.43, a public-school teacher or administrator's personnel file is a public record. Further, these documents are cited to throughout Plaintiff's Amended Complaint in this action and are central to her claims. Accordingly, the exhibits attached to Defendant's Answer fit within both of the well-established exceptions to Rule 12(d). Likewise, Plaintiff's Complaint for a Writ of Mandamus has been filed in a state court and is clearly a matter of public record. Thus, the Court may consider the three exhibits Defendant has attached to its filings without converting this Rule 12 Motion into a motion for summary judgment.

### B. First Claim: Termination of Original Contract

Defendant submits that Plaintiff's first cause of action is time-barred as the latest date Plaintiff's first claim for relief accrued was August 28, 2015. (Def. Mot. at 8–10; Def. Reply at 1). Plaintiff submits that either an eight-year or four-year statute of limitations governs her claims; alternatively, Plaintiff avers that even under a two-year statute of limitations, her first claim is timely as the cause of action did not accrue until July 31, 2017. (Pl. Opp'n at 6–7).

#### 1. Applicable Statute of Limitations

Because 42 U.S.C. § 1983 provides no statute of limitations, this Court must refer to the state's applicable limitations period. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985). In *Wilson*, the Court explained that § 1983 claims were best characterized as tort actions that seek recovery of damages for personal injuries, and therefore federal courts must borrow the state's statute of limitations governing personal injury actions. *Id.* at 275–76. Subsequently, the Sixth Circuit has held that the statute of limitations for a § 1983 claim in Ohio is two years from accrual pursuant to Ohio Rev. Code § 2305.10. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (*en banc*); *see Owens v. Okure*, 488 U.S. 235, 249–50 (1989).

Plaintiff's assertion that either an eight-year or four-year statute of limitations is applicable is not well taken. In support of her contention that an eight-year statute of limitations is appropriate, Plaintiff cites to *Owens*, 488 U.S. 235. However, the *Owens* Court held "that where state law provides multiple statues of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statue for personal injury actions." 488 U.S. at 249–50 (footnote omitted). And, as stated *supra*, the Sixth Circuit found the general provision for personal injury actions of the Ohio Revised Code provides a two-year statute of limitations. *See Browning*, 869 F.2d at 992.

6

Plaintiff's argument that a four-year statute of limitations is applicable is similarly unpersuasive. Plaintiff submits that in *Crabbs v. Scott*, the Sixth Circuit held: "Congress has gone further in the direction of uniformity. It has provided a single, 4-year federal statute of limitations for all civil rights actions, thereby preempting all state rules." (Pl. Opp'n at 7); (quoting *Crabbs v. Scotts*, 880 F.3d 292, 295 (6th Cir. 2018)). The four-year statute of limitations referred to by the *Crabbs* Court is enumerated in 28 U.S.C. § 1658 and states: "(a) Except as otherwise provided by law, a civil action arising under an Act of Congress *enacted after the date of the enactment of this section* may not be commenced later than 4 years after the cause of action accrues." (emphasis added). However, that statute is applicable only "if the plaintiff's claim . . . was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). And as the Sixth Circuit noted in *Mitchell v. Taylor*, No. 16-6335, 2018 WL 4162255, at *2 (6th Cir. Apr. 16, 2018):

> Congress has not enacted a statute of limitations for claims brought under the pre-December 1, 1990, versions of §§ 1981, 1983, 1985. Therefore, for all claims raised under the pre-December 1, 1990, versions of theses statutes, federal courts apply the forum state's personal-injury statute of limitations. [*Jones*, 541 U.S.] at 378, 383–84.

None of Plaintiff's claims was made possible pursuant to a post-1990 amendment to § 1983. As such, Ohio's statute of limitations for personal injury actions, which is two years, governs Plaintiff's claims.

### 2. Accrual of the Cause of Action

While Ohio law bars § 1983 claims that have accrued within two years, "federal law governs the questions of when that limitations periods begins to run." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). "Under federal law, as developed in this Circuit, the statute-of-limitations period begins to run when the plaintiff knows

7

or has reason to know that the act providing the basis of his or her injury has occurred." *Ruiz-Bueno v. Maxim Healthcare Servs., Inc.*, 659 F. App'x 830, 831 (6th Cir. 2016) (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273. "Stated differently, '[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.'" *Cooey*, 479 F.3d at 416 (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003)).

Under Ohio law, Section 3319.16 of the Ohio Revised Code governs the termination of a teacher or administrator's contract by the board of education. *See generally* Ohio Rev. Code § 3319.16. The pertinent portion of Ohio Rev. Code § 3319.16 provides:

> Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of the teacher's contract with full specification of the grounds for such consideration. The board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of the notice by the teacher. Within ten days after receipt of the notice from the treasurer of the board, the teacher may file with the treasurer a written demand for a hearing before the board or before a referee, and the board shall set a time for the hearing which shall be within thirty days from the date of receipt of the written demand, and the treasurer shall give the teacher at least twenty days' notice in writing of the time and place of the hearing....

Ohio Rev. Code § 3319.16. In *State, ex rel. Webb v. Bd. of Educ. Of Bryan City Sch. Dist.*, the Ohio Supreme Court held:

> that the pertinent language contained in R.C. 3319.16 regarding hearing requirements is directory and not mandatory, and that a school board under this statute in a referee-requested hearing situation need only schedule the date for such hearing within thirty days of the receipt of the written demand from the teacher for such a hearing.

*Webb*, 10 Ohio St. 3d at 31.

The facts relevant to the accrual date are as follows. Plaintiff contracted with Defendant for a term of employment of three-years to being on August 1, 2014 and end July 31, 2017. (Contract at 1). However, in mid-July 2015, Plaintiff was notified that Defendant wished to terminate her contract. (Mandamus Compl. ¶ 2). That letter likewise informed Plaintiff that she was suspended without pay and benefits effective July 16, 2015. (*Id.* ¶¶ 2–3). In accordance with Ohio law, Plaintiff timely demanded a referee-hearing and Defendant received that demand on July 28, 2015. (*Id.* ¶¶ 4–6; Demand Letter). The hearing was scheduled to take place on August 25, 2015. (Mandamus Compl. ¶ 6). However, the hearing was cancelled and was not rescheduled. (*Id.* ¶¶ 7–9). And, as of receipt of the Termination Letter, Plaintiff was aware that her salary and other contractual benefits had ended and that she was no longer employed by the Defendant. (*See* Termination Letter).

Plaintiff's first claim for relief is time-barred. Plaintiff's argument that the statute of limitation's clock began to run on contractual end date of July 31, 2017, is unpersuasive. The typical lay person in Plaintiff's situation, should have known to protect their rights when they received notice that Defendant suspended her without pay and was seeking to terminate her contract in mid-July 2015. The Court is cognizant that a "cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (2007) (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526–27 (1991)) (internal quotations omitted). Thus, while Plaintiff may not have known the full extent of her injuries when she received notice that Defendant had placed her on unpaid leave and was seeking to terminate her, the letter Plaintiff received in mid-2015 clearly should have put Plaintiff on notice that she needed to protect her rights. And while Plaintiff began to protect her rights by demanding a referee-hearing, she did not file the present lawsuit until October 25, 2018, over three years after she first

received notice that Defendant was suspending her without pay and seeking to terminate her employment. Accordingly, Plaintiff's first claim for relief is time-barred.

C.    **Second Claim: Termination of Contract Renewed by Operation of Law**

Plaintiff's second claim for relief asserts a claim under § 1983 that Defendant violated her Fourteenth Amendment right to due process by terminating her contractual employment that she acquired by operation of law in June 2017 without the requisite hearing. (Am. Comp. ¶¶ 10–16). The due process claim is predicated upon Defendant's alleged infringement on Plaintiff's property interest in her salary and other benefits, including her STRS pension. (*See id.*).

Title 42 United States Code, Section 1983, in pertinent part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that [s]he was deprived of a right secured by the Constitution or laws of the United States, and (2) that [s]he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)). But the continued ill effects from an original violation are not independent harms that give rise to a separate cause of action. *See e.g. McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (finding, in a matter of first impression, that the ill effects from a violation of § 1983 do not constitute a continuing tort so to toll the statute of limitations) *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010) (finding, that under the continued violation doctrine, a "continuing violation in a § 1983 action occurs when there are continued unlawful acts, not by continued ill effects from the

10

original violation."). And, as discussed *supra*, a two-year statute of limitations governs § 1983 claims in Ohio.

Defendant asserts that Plaintiff has failed to sufficiently allege an independent due process violation in her second claim as such claim complains of nothing more than a continued ill-effect brought about Defendant's original alleged due process violation. (Def. Mot. at 10–11). Accordingly, Defendant avers that Plaintiff's second claim is similarly time-barred. (*Id.* at 11). Defendant submits to hold otherwise would be inequitable. (*Id.* at 11).

In support of its contention that Plaintiff's second claim is indistinct from her first, Defendant analogizes the case at bar to Sixth Circuit cases that distinguish between the "pure benefits of employment" and "the tenured nature of the employment itself." (*Id.*) (citing *Ramsey v. Bd. of Educ. of Whitley Cty.*, 844 F.2d 1268 (6th Cir. 1988); *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990); and *Parks v. City of Chattanooga*, 74 F. App'x 432 (6th Cir. 2003)). Defendant submits that, while these cases discuss the difference between a plaintiff's substantive and procedural due process rights, the cases indicate that the Sixth Circuit has recognized that there is a fundamental and important difference between employment and the benefits associated with that employment. (Def. Mot. at 10). Defendant submits:

> In *Parks*, the plaintiff claimed that he was deprived of due process when a public employer withheld his final paycheck. The Sixth Circuit made a distinction between tenure of employment and specific benefits of employment. The Sixth Circuit found that because this alleged interference did not affect the plaintiff's tenured nature of employment, he could only seek relief by a state breach of contract claim.

(*Id.*) Relying on this distinction, the Defendant asserts that "the alleged deprivation of Plaintiff's right to *employment* occurred in August 2015[;]" and, as such, Plaintiff's second claim is indistinct from her first claim and is time-barred. (*Id.*). Further, Defendant advances that Plaintiff's non-renewal is a mere "continual ill effect[] from [the] alleged due process violation[]" in her first

11

cause of action. (*Id.* at 11). And, relying on Sixth Circuit precedent, the Defendant avers that the continued ill effect of a previous due process violation does not give rise to an independent due process claim. (*Id.*) (citing *McCune*, 842 F.2d at 905; *Kovacic*, 606 F.3d at 308).

In her second cause of action, Plaintiff asserts that her administrator's contract was renewed for two years in June 2017, because she was never terminated or suspended pursuant to §§ 3319.16, 3319.17, or 3319.171, as Defendant's termination of her original administrator's contract was legally deficient. (Am. Compl. ¶¶ 12–15). As such, Plaintiff submits that her "second claim for relief is somewhat different from the first claim for relief in that Plaintiff's employment with Defendant occurred by operation of law (R.C. 3319.02) rather than through the written contract she previously had." (Pl. Opp'n at 5). Further, Plaintiff submits that she "is entitled to the same due process protections before her property interest is taken from her and" that in the context of a Rule 12 Motion, "Defendant has admitted that it has not provided any such due process of law." (*Id.*).

The Court agrees with Defendant. While *Ramsey* and its progeny are not directly on point to the case at bar, their reasoning is applicable: there is a distinct and important difference between the right to employment and the benefits that are associated with that employment. *See e.g. Ramsey*, 844 F.2d at 1274–75; *Charles*, 910 F.2d at 1355; *Parks*, 74 F. App'x at 443. Defendant allegedly violated Plaintiff's right to employment in 2015 when it terminated her without due process, according to the Amended Complaint. The renewal of Plaintiff's contract by operation of law is a benefit of her original contract. Thus, as her second claim arises out of the infringement on this benefit of her original contract, Plaintiff's second claim merely amounts to an ill effect associated with her first claim. Because Plaintiff's second claim is not an independent cause of action, but rather an ill effect tied to her first cause of action, it too is time-barred.

### D. Third Claim: Termination of Teacher Contract

Defendant submits that Plaintiff's third § 1983 claim fails for the same reasons that her second claim does: her third claim is time-barred because it is not an independent ground for relief and is instead associated with the alleged due process violation due to the termination of her administrator's contract. Plaintiff maintains that her third claim is:

> in essence, in the alternative to the first and second claims for relief in that if it is determined that she is not entitled to relief under her administrator's contract or relief under contract acquired by operation of law, she is entitled to relief under the continuing contract of employment that she held as a teacher as she has a property interest in that contract.

(Pl. Opp'n at 6).

The Court again agrees with Defendant. The termination letter dated July 17, 2015 and which Plaintiff received in mid-July 2015 states: "[T]he Board of Education adopted a resolution declaring its intention to consider the termination of your administrative contract and teacher contact [sic], on the basis of other good and just cause." (Termination Letter). As such, the alleged due process violation of terminating her continuing teacher's contract is inextricably linked to the alleged due process violation of terminating her administrator's contract. To hold otherwise would be inequitable. Therefore, Plaintiff's third claim is time-barred.

### IV.

For the reasons stated herein, Defendant's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**.

**IT IS SO ORDERED.**

_6-5-2019_
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE